**WEISS LAW**
Joel E. Elkins (SBN 256020)
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: (310) 208-2800
Facsimile: (310) 209-2348
jelkins@weisslawllp.com

*Counsel for Plaintiff*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAMUEL I. KOENIG, Derivatively on Behalf of ENOCHIAN BIOSCIENCES INC.,<br><br>Plaintiff,<br><br>v.<br><br>SERHAT GUMRUKCU, RENE SINDLEV, MARK DYBUL, CAROL BROSGART, GREGG ALTON, JAMES SAPIRSTEIN, CARL SANDLER, HENRIK GRONFELDT-SORENSON, and JAYNE MCNICOL,<br><br>Defendants<br><br>and<br><br>ENOCHIAN BIOSCIENCES, INC.,<br><br>Nominal Defendant. | Case No. 2:22-cv-06871-JWH-JDE<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. John W. Holcomb |

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that on Friday, December 5, 2025, at 9:00 a.m., plaintiff Samuel I. Koenig ("Koenig" or the "Plaintiff") will move before the Honorable John W. Holcomb, United States District Judge, Courtroom 9D of the United States District Court for the Central District of California, 411 W. 4th Street, Santa Ana, California, to grant this Unopposed Motion for Preliminary

Approval of Derivative Settlement ("Motion"), which settlement is set forth in the Amended Stipulation and Agreement of Settlement dated October 30, 2025 (the "Stipulation" or "Stip."), and filed concurrently.[1] The Settlement resolves the above-captioned Action, brought by Koenig on behalf of Enochian Biosciences, Inc. ("Enochian" or the "Company"), now known as Lunai Bioworks, Inc., and the following related shareholder Derivative Matters: (1) Susan Midler ("Midler"), plaintiff in the derivative action on behalf of Enochian styled *Midler v. Gumrukcu, et. al.*, No. 22-STCV-33960, pending in the Superior Court of California, County of Los Angeles (the "California State Court Action"); and (2) John Solak ("Solak"), plaintiff in the derivative action on behalf of Enochian styled *Solak v. Gümrükcü, et. al.*, No. 1:23-cv-00065-GBW, pending in the United States District Court for the District of Delaware (the "Delaware Federal Action"), who served a books and records demand on the Company pursuant to 8 *Del. C.* § 220 ("Section 220") (the Action, and the California State Court Action, and the Delaware Federal Action are collectively referred to as the "Derivative Actions," and the plaintiffs in the Derivative Actions are collectively referred to as the "Plaintiffs" or "Settling Stockholders"). The Motion is based on the following Memorandum of Points and Authorities, the Stipulation and exhibits thereto, and such additional evidence or argument as the Court may require.

**STATEMENTS OF ISSUES TO BE DECIDED AND RELIEF SOUGHT**

Whether the proposed Settlement is within the range of possible approval such that the form and means of notice of the Settlement pursuant to the Stipulation should be directed to Current Enochian Stockholders and a date for a Settlement Hearing to determine whether to finally approve the Settlement should be set by the Court. The Plaintiff respectfully requests that the Court enter an order preliminarily approving the Settlement, including approving the dissemination of notice of the Settlement pursuant to the Stipulation and setting a date for the Settlement Hearing.

[1] The full terms of the Settlement are set forth in the Stipulation. Unless otherwise noted, all capitalized terms have the same definition as set forth in the Stipulation, which is attached as Exhibit 1 to the Declaration of Mark D. Smilow in Support of Unopposed Motion for Preliminary Approval of Derivative Settlement. Additionally, all emphasis herein is added and citations and footnotes are omitted unless otherwise noted.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Plaintiff respectfully submits this memorandum in support of the Motion for the Court to preliminarily approve the Settlement. The proposed Settlement resolves shareholder derivative claims brought on behalf of nominal defendant Enochian against the Individual Defendants (certain of Enochian's former directors and officers) in the Action as well as the Derivative Matters. The Settlement is the product of extensive arm's-length negotiations between the Settling Parties, overseen by mediator Jed D. Melnick, Esq. of Judicial Arbitration and Mediation Services ("JAMS") (the "Mediator"). Stip. § I.B.

In connection with the proposed Settlement of the Derivative Matters, Enochian has agreed to maintain for at least five years (the "Commitment Term") a comprehensive set of corporate governance reforms (the "Reforms") that will significantly improve Enochian's internal controls, policies, processes, and procedures, including improving Enochian's Board of Directors' ("Board") independence and oversight of risk and public disclosures. Stip. §§ II.A.2. The Reforms include, *inter alia*: (i) the appointment of a lead independent director; (ii) enhancements to the duties and responsibilities of the Audit Committee designed to, *inter alia*, ensure reporting and coordination with the Disclosure Committee; (iii) enhancements to the duties and responsibilities of the Compensation Committee; (iv) enhancements to and formalization of the duties and responsibilities of the Company's Management-Level Disclosure Committee designed to assist the Company both in meeting its disclosure obligations in a timely and accurate manner, and in supporting Enochian's Audit Committee in the discharge of its obligations in connection with the Company's quarterly and annual filings with the SEC; (v) enhancements to the Company's onboarding process for scientific advisors; (vi) reforms to the Company's Whistleblower Policy; (vii) director education; and (viii) employee training. *Id.* The Reforms are designed to address the alleged wrongdoing and prevent its recurrence and will enhance Enochian's value and foster investor confidence by improving

Enochian's corporate governance, internal controls, and the independence and effectiveness of the Company's corporate governance and Board oversight.

After reaching agreement in principle on the Reforms, the Settling Parties commenced good faith, arm's-length negotiations concerning a fair and reasonable Fee and Expense Amount to be paid to Settling Stockholders' Counsel. In recognition of the substantial benefits the Settlement will confer on Enochian and its stockholders, Settling Defendants' D&O insurers have agreed to pay to Settling Stockholders' Counsel a Fee and Expense Amount of $250,000, subject to Court approval. Enochian and the Individual Defendants do not oppose the modest Fee and Expense Amount in light of the substantial benefits conferred by the Settlement. Stip. § II.A.3.3.

At the preliminary approval stage, the Court need only (1) determine that the proposed Settlement is within the range of what might be found to be fair, reasonable, and adequate, such that notice of the Settlement should be provided to Current Enochian Stockholders and (2) schedule a Settlement Hearing for consideration of final settlement approval. The proposed Settlement plainly meets this standard. In addition, the proposed schedule and form and means of notice of the Settlement are adequate to apprise Current Enochian Stockholders of the Settlement's terms and to afford them a fair opportunity to comment on the Settlement. Accordingly, the Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order (Exhibit A to the Stipulation, and separately submitted concurrently herewith), which grants preliminary approval of the proposed Settlement, directs that notice be given to Current Enochian Stockholders, and schedules a hearing on final settlement approval.

## II. <u>OVERVIEW OF LITIGATION</u>

### A. <u>Summary of the Allegations</u>

Enochian is a biotechnology company developing advanced allogeneic cell and gene therapies to promote stronger immune system responses potentially for long-term or life-long cancer remission in some of the deadliest cancers, and potentially to treat or cure serious infectious diseases such as

Human Immunodeficiency Virus (HIV) infections, with a subsidiary AI-driven healthcare technology company focusing on the earliest possible detection of cancer and its recurrence.

Settling Stockholders allege that the Individual Defendants breached their fiduciary duties to Enochian and its stockholders by making or causing Enochian to make public statements and material omissions promoting the purported scientific research performed by the Company's former Scientific Adviser, Serhat Gumrukcu ("Gumrukcu"),[2] his qualifications and his involvement with the Company. Settling Stockholders allege these failings led monetary and reputational harm to Enochian when it was later first revealed that Gumrukçu was arrested by federal authorities on suspicion of murder connected with felony fraud, and when it was subsequently revealed that Gumrukçu falsified data in research performed for the Company. Settling Stockholders further allege that, despite knowing that the reputation and veracity of its scientific advisers and their research were essential for the success of Enochian, the Individual Defendants failed to implement and monitor the internal controls and reporting systems essential to maintaining the Company's research integrity or communicate in a transparent fashion with customers, employees, and stockholders when that research integrity was compromised causing damage to Enochian.

### B. Procedural Background

#### 1. The Action

On September 22, 2022, plaintiff Koenig filed the first Action derivatively on behalf of nominal defendant Enochian against certain of the Individual Defendants alleging claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), unjust enrichment and gross mismanagement. On January 24, 2023, the Court entered a Stipulation and Proposed Order staying the *Koenig* Action pending events in the related securities class action captioned *Chow v. Enochian Biosciences Inc., et al.*, No. 22-cv-01374-JWH-JDE, in this Court (the "Securities Action") and

[2] Serhat Gumrukcu is a named Defendant, but has not appeared in the Derivative Actions and is expressly excluded from the settlement thereof, and no claims against him are being released, waived, or relinquished in any manner. Cooley LLP does not represent Serhat Gumrukcu.

subject to certain conditions.

On February 10, 2023, after entering into a mutually negotiated confidentiality agreement, Defendants produced to Koenig 1,435 pages of Company documents pursuant to a confidentiality agreement pertaining to the wrongdoing alleged in the Securities Action. Thereafter, Plaintiff in the Action began preparing an amended complaint, which was not filed because of the settlement discussions.

On June 28, 2024, the Court entered an order denying the motion to dismiss in the Securities Action. Thereafter, the Parties in the Action met and conferred, and filed a Joint Status Report on July 22, 2024, notifying the Court that the Parties anticipated being in a position to submit a new stay of this action or a proposed case schedule within 90 days. Similar Joint Status Reports were later filed on October 22, 2024, January 10, 2025, April 11, 2025, July 11, 2025, and October 3, 2025 in view of the settlement negotiations of the Parties, as discussed below.

**2. <u>The Related Derivative Matters</u>**

On October 20, 2022, Midler filed the action styled *Midler v. Gumrukcu, et. al.*, No. 22STCV33960 in the California Superior Court of Los Angeles County derivatively on behalf of nominal defendant Enochian against the Individual Defendants alleging claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, contribution and indemnification, and gross mismanagement. On January 20, 2023, the court entered a Stipulation and Proposed Order staying the California State Court Action pending events in the related Securities Action and subject to certain conditions. On June 28, 2024, the Court denied the motion to dismiss in the Securities Action. Thereafter, the Parties in the California State Court Action met and conferred, and filed a Joint Status Report and Stipulation to Continue Stay on July 29, 2024, notifying the court that the Parties anticipated being in a position to submit a new stay of the action or a proposed case schedule within 90 days. Similar Joint Status Reports were later filed on October 28, 2024, January 24, 2025, April 29, 2025, July 28, 2025, and July 31, 2025, in view of the settlement negotiations of the Parties, as discussed below.

On June 3, 2022, Solak made a demand to inspect the Company's books and records pursuant to title 8, section 220 of the Delaware General Corporation Law Code in connection with the misconduct alleged in the Derivative Actions. Thereafter, pursuant to a confidentiality agreement, the Company produced approximately one thousand two hundred pages of documents to Solak that were responsive to the demand (the "220 Documents"). On January 19, 2023, utilizing the 220 Documents, Solak filed the action styled *Solak v. Gumrukcu, et. al.*, No. 23-cv-00065-GBW in the United States District Court for the District of Delaware derivatively on behalf of nominal defendant Enochian against the Individual Defendants alleging claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and violation of Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act"). On April 4, 2023, the Court entered a Stipulation and Proposed Order staying the Delaware Federal Action pending events in the Securities Action and subject to certain conditions. Thereafter, the Parties in the Delaware Federal Action met and conferred, and filed a Joint Status Report on July 24, 2024, notifying the Court that the Parties anticipated being in a position to submit a new stay of this action or a proposed case schedule within 90 days. Similar Joint Status Reports seeking extensions of the stay were later filed on October 24, 2024, January 27, 2025, April 29, 2025, July 29, 2025, and October 29, 2025, which were all granted, in view of the settlement negotiations of the Parties, as discussed below.

### C. <u>Mediation</u>

The Settling Parties, by and through their attorneys, engaged in good faith, arm's-length discussions regarding the possible settlement of the Derivative Matters. To that end, the Settling Parties agreed to participate in mediation overseen by a nationally recognized Mediator with extensive experience mediating complex shareholder disputes similar to the Derivative Matters who also served as Mediator in the Securities Action. In advance of the September 17, 2024 mediation, the Plaintiff provided Enochian and the Individual Defendants with a settlement demand with proposed reforms aimed at strengthening the Company's internal controls and corporate governance practices to prevent recurrence of the alleged misconduct and alleged damage to the Company at issue

in the Derivative Matters. While no resolution was reached at the mediation session, progress was made and the parties continued discussing a potential settlement thereafter and engaged in frank discussions regarding the strengths and weaknesses of the claims and defenses at issue. The Settling Parties continued to exchange information, documents, and detailed written settlement proposals and counterproposals, debating the merits of the proposals in numerous communications between the Settling Parties' counsel.

From September 17, 2024 to February 10, 2025, Plaintiffs' Counsel had numerous discussions with Defendants' Counsel (defined *infra*) regarding settlement issues. On February 10, 2025, the Settling Parties agreed in principle on the material terms of the corporate governance reforms to be adopted by the Company in connection with the Settlement, as set forth below in paragraph 2.1 (the "Reforms").

After reaching agreement on the Reforms, the Settling Parties commenced negotiations regarding reasonable attorneys' fees and expenses to be paid to Plaintiffs' Counsel, subject to Court approval, in consideration for the substantial benefits conferred upon Enochian and Current Enochian Stockholders by the Settlement. Per that proposal, Defendants' D&O insurers have agreed to pay the Fee and Expense Amount, subject to Court approval.

## III. TERMS OF THE SETTLEMENT

The proposed Settlement is an excellent result for Enochian and its stockholders. Within ninety (90) days after the Court enters a Final Judgment approving the Settlement or at the Board's next regularly scheduled meeting following the entry thereof, whichever is earlier, the Board shall take all necessary and appropriate action to adopt, implement, and maintain for the Commitment Term, the Reforms discussed below. Significantly, the Settling Parties have acknowledged and agreed that the Settling Stockholders' litigation and settlement efforts in the Derivative Matters was a substantial factor in the Board's agreement to adopt the Reforms. The Settling Parties have further acknowledged and agreed that the Reforms confer substantial benefits on the Company and Current

Enochian Stockholders and that the Settlement is in all respects fair, reasonable, and adequate, and serves the best interests of the Company and Current Enochian Stockholders.

**A. Lead Independent Director**

The Company shall appoint a Lead Independent Director who shall have the following responsibilities:

1. In consultation with other Board members, determine the appropriate flow of information from management to the Board necessary for the Board to perform its functions effectively and responsibly, and, specifically, to request that certain material be provided to the Board;
2. Coordinate the retention of appropriate consultants to the Board;
3. Evaluate, along with the Compensation Committee and full Board, the performance of the CEO, and meet with the CEO to discuss the CEO's performance; and
4. In conjunction with the full Board and appropriate Board Committees, oversee the Company's compliance with and implementation of all applicable corporate and securities laws, including any necessary revisions to the Company's governance policies in this area.

**B. Audit Committee Reforms**

The Audit Committee Charter shall be amended to include: 1) posting on the Company's website; 2) that the Audit Committee shall meet in executive session at least annually to discuss compliance and Executive Risk Management matters without management present; 3) that the Audit Committee shall have the authority to take or direct any necessary and appropriate corrective or remedial action, including notifying the U.S. Securities and Exchange Commission and the United

States Department of Justice, if Enochian, its directors, officers or employees fail in any material respect to comply with any relevant laws or regulations under which Enochian operates; 4) with respect to risk disclosures in the Company's SEC Form 10-Qs and Form 10-Ks, that the Audit Committee shall review appropriate disclosures of material risks to the Company's business for accuracy; 5) that the Audit Committee shall, at least annually, review the relevant policies set out in the Audit Committee Charter and report to the Board regarding any necessary improvements to the effectiveness of the policies; and 6) that the minutes of the Audit Committee shall be maintained by Enochian's general counsel, or equivalent role, for no less than five (5) years.

**C. <u>Reforms to the Board Compensation Committee</u>**

The Compensation Committee of the Board shall retain primary responsibility regarding compensation. An executive officer, or member of senior management's compliance with: (i) the Company's written policies, practices, and procedures; and (ii) the laws, rules and regulations within which the Company operates shall be considerations of the Compensation Committee when making decisions with respect to performance-based or incentive compensation plans and individual awards for executive officer and other members of senior management. The Compliance Officer/Chief Financial Officer or equivalent role will discuss the compliance performance of the Executive Officers with the Compensation Committee of the Board annually, as part of the Compensation Committee's review of the performance and associated compensation decisions for executive officers.

**D. <u>Creation of Management-Level Disclosure Committee Charter</u>**

The Company shall memorialize in a Charter, its management-level Disclosure Committee ("Disclosure Committee") with the purpose of reviewing for accuracy, completeness, and timeliness: (i) filings with the SEC and (ii) material corporate information disseminated via corporate disclosure

channels delivering information to investors, including that:

1. The Disclosure Committee members shall consist of the Company's CEO, CFO/Compliance Officer, COO, or equivalent roles.

2. The Disclosure Committee shall consult with management as necessary, with respect to disclosures related to their areas of responsibility, including, but not limited to: (i) the Company's research and development activities; (ii) compliance with relevant laws, rules and regulations; and (iii) product candidate studies.

3. The mission of the Disclosure Committee will include implementing effective procedures and protocols such that all the Company's corporate public statements, including, but not limited to, SEC filings, press releases, and other corporate public statements, are reviewed for accuracy, integrity, and completeness.

4. The Disclosure Committee shall hold regular meetings prior to the filing of the Company's annual and quarterly reports with the SEC, and ad hoc meetings from time to time, if needed.

5. Other personnel of the Company, or representatives of its outside advisors, may be invited to attend Disclosure Committee meetings as deemed necessary or appropriate by the Disclosure Committee in performing its duties and responsibilities.

6. The Disclosure Committee shall timely provide the Compliance Committee with a written report regarding any concerns of the Disclosure Committee whenever warranted by the facts, issues, and circumstances.

7. The responsibilities of the Disclosure Committee shall include:

a. Review the Company's SEC Form 10-Qs and Form 10-Ks for accuracy, completeness, and timeliness.

b. Review (or delegate to an appropriate subcommittee of the Disclosure Committee the review of) the Company's other Exchange Act filings (including SEC Form 8-Ks and Proxy Statements), and registration statements for accuracy, completeness, and timelines.

c. Review as necessary (or delegate to an appropriate subcommittee of the Disclosure Committee the review of) material corporate information disseminated via corporate disclosure channels delivering information to investors.

**E. <u>Onboarding of Scientific Advisors</u>**

To the extent the Company engages any non-employee scientific advisor, the Company shall assess whether the external scientific advisor holds the credential required to perform the scientific work he or she is retained to perform.

**F. <u>Reforms to Enochian's Whistleblower Policy</u>**

1. While Enochian presently includes information on how to report wrongdoing in its Code of Business Conduct and Ethics, the Company shall implement a specific, separate, written policy protecting whistleblowers (the "Whistleblower Policy").

a. The whistleblower policy shall:

i. Encourage interested parties to bring forward ethical and legal violations and/or a reasonable belief that ethical and legal violations have occurred to the Audit Committee, Chief Financial Officer, Compliance Officer, or to Enochian's whistleblower hotline (the "Whistleblower Hotline") so that action may be taken to resolve the problem.

ii. The policy shall communicate effectively that Enochian is serious about adherence to its corporate governance policies and that whistleblowing is an important tool to achieve this goal.

iii. A log of whistleblower complaints, as well as the results of all investigations of complaints, shall be memorialized in writing by the Chief Financial Officer, Compliance Officer, or equivalent role, and maintained for a period of not less than five (5) years. The Company shall require its external auditor to review the log and any investigation results in connection with each annual audit;

2. At each regularly scheduled Board meeting, the Board shall be provided with a summary of the types of complaints received, as well as any material information resulting from any internal investigation into such complaints.

3. The Company shall post information regarding its Whistleblower Hotline on its website, prominently display the telephone numbers for the toll-free hotline, post a link to the website through which employees may submit complaints, and make clear that it is available to assist on matters pertaining to fraud or similar unlawful activities at Enochian.

**G. <u>Director Education</u>**

Director Orientation and Continuing Education. Each member of the Board shall participate in continuing education related to corporate governance practices and other topics pertinent to the Company's business, as follows:

1. All new Board members shall attend a director education program within six (6) months of election or appointment to the Board. This training may be conducted

either at an outside entity or internally by the Company's General Counsel or outside counsel.

2. Every member of the Board shall attend a similar education program every three years, and the training may be conducted either at an outside entity or internally by the Company's General Counsel or outside counsel. Any such programs or training may concern, for example, compliance with laws and regulations, disclosures to stockholders, and fiduciary duties in the context of a regulated public company, including compliance with GAAP, the Sarbanes-Oxley Act, corporate governance, assessment of risk, compliance auditing, and reporting requirements for publicly traded corporations.

3. Each Board member will certify annually in writing that in the previous 12 months they have: (i) read the Code of Business Conduct and Ethics; (ii) complied with the terms of the Code of Business Conduct and Ethics; and (iii) will continue to comply with the terms of the Code of Business Conduct and Ethics.

**H. Employee Training**

1. The Compliance Officer, Chief Financial Officer, or equivalent role shall be charged with primary responsibility for education pursuant to this provision. The Company shall provide all new hires and appropriate employee populations with mandatory training on expectations with respect to integrity and compliance and the Code of Business Conduct and Ethics. The Company shall require the appropriate employee populations to attest on an annual basis that they have read, understand, and will comply with the Code of Business Conduct and Ethics.

2. Training shall include coverage of the relevant compliance policies, as

appropriate, and the Code of Conduct.

3. Training shall be conducted through live training or online, as appropriate.

## IV. LEGAL STANDARDS FOR PRELIMINARY SETTLEMENT APPROVAL

It is well-settled that "compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *see also Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 635 (9th Cir. 1982) (recognizing that the "settlement process [is] favored in the law"); *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977) ("there is an overriding public interest in settling and quieting litigation"). Settlements are particularly favored "in class actions and other complex cases [such as derivative actions] where substantial judicial resources can be conserved by avoiding formal litigation." *In re NVIDIA Corp. Deriv. Litig.*, 2008 WL 5382544, at *2 (N.D. Cal. Dec. 19, 2008); *see also In re Xoma Corp. Sec. Litig.*, 1992 U.S. Dist. LEXIS 10502, at *3-4 (N.D. Cal. July 10, 1992) ("The law favors settlement of cases and quieting of litigation, particularly in complex class actions and derivative litigation.").[3]

Rule 23.1 requires the Court to approve any settlement, voluntary dismissal, or compromise of derivative claims. Fed. R. Civ. P. 23.1(c). "Review of a proposed settlement generally proceeds in two stages, a hearing on preliminary approval followed by a final fairness hearing." *True v. Am. Honda Motor Co., Inc.*, 2009 U.S. Dist. LEXIS 29814, at *8-9 (C.D. Cal. Mar. 25, 2009) (citing *Manual for Complex Litigation*, §21.632 (4th ed. 2004) ("*Manual*")). While the Settling Stockholders believe that the Settlement merits final approval, the Court need only *preliminarily* approve the Settlement at this time. At the preliminary approval stage, the Court's review of the proposed Settlement is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

[3] *See also Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) ("Settlements of shareholder derivative actions are particularly favored because such litigation is notoriously difficult and unpredictable.").

settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

This is a low threshold, requiring the Court to determine only "whether a proposed settlement is within the range of possible approval and that notice should be sent to" stockholders. *True*, 2009 U.S. Dist. LEXIS 29814, at *8-9; *see also Manual* at §13.14 ("First, the [court] reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing.").[4] Where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, ... and falls within the range of possible approval, preliminary approval is granted." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Plaintiffs respectfully submit that the Settlement is well "within the range" of possible approval and should therefore be preliminarily approved.

## V. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A. Great Weight Should Be Attributed to the Settling Parties' Belief that the Settlement Is Fair and Reasonable

As a threshold matter, the Settling Parties believe that the proposed Settlement represents a fair, reasonable, beneficial, and practical resolution of highly uncertain and complex litigation, and that its terms fairly account for the risks and potential rewards of the claims. As the Ninth Circuit recognized, significant weight should be attributed to parties' belief that litigation should be settled on proposed terms, since "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *see In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10, 1992) (finding belief of counsel that proposed settlement was best result for the class to be compelling factor in approving

[4] *See also Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (purpose of preliminary approval hearing is "to ascertain whether there is ***any reason*** to notify the class members of the proposed settlement and to proceed with a fairness hearing").

settlement); *Clark v. Ecolab Inc.*, 2010 U.S. Dist. LEXIS 47036, at *17-18 (S.D.N.Y. May 11, 2010) ("'Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment, for that of the parties who negotiated the settlement.'") (alteration in original); *In re NeuStar, Inc. Sec. Litig.*, 2015 WL 8484438, at *4 (E.D. Va. Dec. 8, 2015) (where plaintiffs' counsel are '"nationally recognized members of the securities litigation bar,'" the Court "may pay heed to [Plaintiffs'] Counsel's judgment in approving, negotiating, and entering into a putative settlement").

The Settling Parties have determined that the Settlement confers substantial benefits on the Company and Current Enochian Stockholders and that is in the best interests of the Company and its stockholders. Stip. § II.A.2.1. The Settling Parties  acknowledge that the Derivative Matters were a substantial factor in  the Board's agreement to adopt, implement, and maintain the Reforms (Stip. § II.A.2.1); *see Zapata Corp. v. Maldonado*, 430 A.2d 779, 782 (Del. 1981); *Brooks v. Am. Exp. Indus., Inc.*, 1977 U.S. Dist. LEXIS 17313, at *10 (S.D.N.Y. Feb. 17, 1977) ("The Court is of the view that in this case, the decision of the AEI board to approve this settlement is appropriately afforded certain deference; it is a business judgment with presumptive validity.").

In sum, this unanimous agreement that the Settlement, including each of its terms, is in the best interests of Enochian and its stockholders is compelling and supports preliminary approval.

**B. <u>The Settlement Is the Product of Arm's-Length Negotiations</u>**

The Settlement was achieved through significant arm's-length negotiations by well-informed counsel. Where "the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex ... litigation, the Settlement will enjoy a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *see also Villanueva v. Morpho Detection, Inc.*, 2015 U. S. Dist. LEXIS 106183, at *14 (N.D. Cal. Aug. 12, 2015) (same); *First Capital Holdings*, 1992 U.S. Dist. LEXIS 14337, at *8 (same). Here, the Settlement was negotiated between experienced counsel possessing a firm understanding of the strengths and weaknesses of the claims and defenses asserted, is the product of

significant give and take by the Settling Parties, and was reached after extensive negotiations between the Settling Parties and their respective counsel. *See* Stip. §§I.B-E.

The assistance of the neutral, well-respected Mediator provides further assurances that the Settlement was reached fairly. *See* Stip. § I.B; *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("mediator's involvement ... helps to ensure that the proceedings were free of collusion and undue pressure"); *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1370 (N.D. Ga. 2019) ("mediation with an experienced mediator ... further confirms that the process was procedurally sound and not collusive").

Each of the Settling Parties was represented by zealous and able counsel with extensive experience in complex derivative litigation, and who were well-informed about the legal and factual issues presented. Settling Stockholders and Settling Stockholders' Counsel conducted extensive research and investigation into the Individual Defendants' alleged misconduct and the corresponding alleged damages to the Company. This investigation included, *inter alia*: (i) reviewing Enochian's press releases, public statements, SEC filings, and securities analysts' reports and advisories about the Company; (ii) reviewing public filings, media reports, and analyst commentaries about the Company and its technologies; (iii) researching the applicable law with respect to the claims asserted in the Derivative Matters and the potential defenses thereto; (iv) reviewing and analyzing the Company's corporate governance policies and Code of Conduct and the charters of all Board committees; (v) reviewing and analyzing the pleadings and other papers filed in the Securities Action, and evaluating the merits of, and the Individual Defendants' liability in connection with, the Securities Action and the Derivative Matters; (vi) reviewing and evaluating over one thousand pages of confidential, internal Enochian documents that were produced in response to certain Settling Stockholders' Section 220 demands; (vii) preparing and filing derivative complaints, preparing a draft amended complaint in the Action, and preparing and serving the litigation and Section 220 demands in the Derivative Matters; (viii) reviewing the Company's existing corporate governance policies and preparing extensive settlement demands detailing proposed corporate governance reforms to

strengthen the Company's internal controls and corporate governance practices; (ix) participating in the mediation session and substantive, protracted settlement discussions with Settling Defendants' Counsel under the auspices of the Mediator; and (x) negotiating the Stipulation.

The accumulation of the information discovered through the above efforts permitted Settling Stockholders and Settling Stockholders' Counsel to be well-informed about the strengths and weaknesses of the derivative claims and to engage in effective settlement negotiations with Defendants.

**C. The Settlement Is Well Within the Range of Possible Approval**

In determining whether to approve a shareholder derivative settlement, "[t]he principal factor ... is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) (omission in original); *see In re Apple Comput., Inc., Deriv. Litig.*, 2008 WL 4820784, at *2 (N.D. Cal. Nov. 5, 2008) ("principal factor to consider … is the benefit to [the real party in interest] as compared to the risks posed by derivative litigation"). "Strong corporate governance is fundamental to the economic well-being and success of a corporation[;]" accordingly, courts have long "recognized that corporate governance reforms such as those achieved here provide valuable benefits to public companies." *In re NVIDIA Corp. Deriv. Litig*, 2009 U.S. Dist. LEXIS 24973, at *11-12 (N.D. Cal. Mar. 18, 2009); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970) ("[A] corporation may receive a 'substantial benefit' from a derivative suit ... regardless of whether the benefit is pecuniary in nature."); *Maher*, 714 F.2d at 461 ("[T]he effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor.").

Courts, thus, approve settlements based on corporate governance reforms "specifically designed to minimize the probability of violations of fiduciary duties and federal securities laws." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005). Such reforms make it "far less likely [that the corporation will] become subject to long and costly securities litigation in the future, as well

as prosecution or investigation by regulators or prosecutors." *Id.*; *see In re Pfizer Inc. S'holder Deriv. Litig.*, 780 F. Supp. 2d 336, 342 (S.D.N.Y. 2011) (approving settlement where reforms "significantly improved institutional structure for detecting and rectifying the types of wrongdoing that have … caused … harm to the company"); *Unite Nat'l Ret. Fund v. Watts*, 2005 WL 2877899, at *2 (D.N.J. Oct. 28, 2005) (non-monetary "relief [that] is intended to prevent future harm" supports settlement).

Here, as discussed above, the Reforms achieved in the Settlement confer substantial benefits on Enochian and Current Enochian Stockholders. These Reforms will help: (i) reduce the risk that Enochian and its stockholders will suffer loss of investor confidence and reduce legal/regulatory exposure by improving the Company's internal controls and oversight regime, public disclosures, and other business practices; and (ii) enhance the value of the Company, improve the Company's business prospects, and (iii) foster investor confidence in the accuracy of the Company's public disclosures and the independence and effectiveness of the Company's corporate governance and Board oversight. Enochian has agreed, subject to the terms of the Stipulation, to maintain the Reforms for a minimum of five years—a meaningful amount of time intended to ensure the Reforms become embedded in the Company's policies, practices, and corporate culture, thus protecting against discontinuation of these Reforms following the five-year period. Stip. § II.A.2.1; *see also, e.g.*, *Cohn*, 375 F. Supp. 2d at 850 (finding that corporate governance measures that must be in place for no less than three years will "provide meaningful ways of avoiding the problems [the company] experienced in the recent past").

Yet, any evaluation of the benefits of a proposed settlement must be tempered by recognition that any compromise involves concessions by all parties. Indeed, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624. "[T]he odds of winning [a] derivative lawsuit [a]re extremely small." *Pac. Enters*, 47 F.3d at 378; *Cohn*, 375 F. Supp. 2d at 852; *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973). Demand futility under Delaware law, in particular, presents a significant pleadings-stage hurdle for derivative plaintiffs. *See* Delaware Chancery Court Rule 23.1 ("The complaint shall … allege ***with particularity*** the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from

the directors … and the reasons for the plaintiff's failure to obtain the action or for not making the effort."). Indeed, even a conflicted board can wrest control of a derivative claim from a stockholder by establishing a committee of independent directors to investigate the claim and determine whether to prosecute it. *See Zapata*, 430 A.2d at 786 ("We do not think that the interest taint of the board majority is per se a legal bar to the delegation of the board's power to an independent committee composed of disinterested board members. The committee can properly act for the corporation to move to dismiss derivative litigation that is believed to be detrimental to the corporation's best interest.").

Even if Settling Stockholders were able to survive the pleading stage, they would need to secure evidence sufficient to overcome motions for summary judgment predicated on the "business judgment rule," which affords directors the presumption that they acted on an informed basis and in the good faith belief that their actions taken were in the best interest of the company (*see*, *e.g.*, *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 746-47 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006)), and the exculpation and indemnification rights granted to directors, absent a demonstration of intentional misconduct and disloyalty. *See* 8 *Del. C.* §102(b)(7) (corporations may exculpate directors from personal liability for damages except where they fail to act in good faith). While Settling Stockholders believe their claims have merit, the fact is that the claims against all the Individual Defendants rest on circumstantial evidence, and the claims against Enochian's outside directors, in particular, center on alleged oversight failures, which may be "the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996). Moreover, the discovery required before trial would be exceedingly costly, complex, and time-consuming, as it would encompass an enormous volume of documents, depositions of myriad fact witnesses, and preparation of expert reports and depositions of experts.[5]

---

[5] The challenges involved in proving damages are equally daunting. *In re Lloyd's Am. Tr. Fund Litig.*, 2002 WL 31663577, at *21 (S.D.N.Y. Nov. 26, 2002) ("The determination of damages … is a complicated and uncertain process, typically involving conflicting expert opinions. The reaction of a jury to such complex expert testimony is highly unpredictable."). And even a victory at trial is no guarantee that the judgment would avoid reversal on appeal. *See, e.g.*, *In re Apollo Grp., Inc. Sec.*

The Settlement eliminates these and other risks and costs of continued litigation, including the risk of no recovery for Enochian, and it permits the Company to return its full attention to its business and to restoring its reputation among investors and generating value for its stockholders. *See In re AOL Time Warner S'holder Deriv. Litig.,* 2006 WL 2572114, at *5 (S.D.N.Y. Sept. 6, 2006). The substantial benefits of the proposed Settlement, which were only achieved through the Settling Parties' hard-fought negotiations, demonstrate that the Settlement is "fair, reasonable and adequate to all concerned," and "within the range of possible approval." *Officers for Justice*, 688 F.2d at 625; *see also In re Zuora, Inc. Deriv. Litig.*, No. 3:19-cv-5701-SI (N.D. Cal. July 14, 2023) (finding that "the proposed Settlement falls within the range of possible approval criteria, as it provides a beneficial result for [the company] and appears to be the product of serious, informed, non-collusive negotiations overseen by an experienced mediator").

## VI. <u>NOTICE TO CURRENT ENOCHIAN STOCKHOLDERS</u>

The Plaintiff seeks Court approval of the form and manner of the notice of the Settlement to Current Enochian Stockholders set forth in the Stipulation and request entry of the Preliminary Approval Order substantially in the form of Exhibit A to the Stipulation, submitted concurrently herewith, which provides: (i) preliminary approval of the Settlement set forth in the Stipulation; (ii) approval of the method of providing notice of the proposed Settlement to Current Enochian Stockholders; (iii) approval of the form of Notice and Summary Notice attached to the Stipulation as Exhibits B and C, respectively; and (iv) a date for the Settlement Hearing. Stip. § II.A.4. Federal Rule of Civil Procedure 23.1 requires "[n]otice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed R. Civ. P. 23.1(c). The rule provides courts with discretion, in considering circumstances of a particular case, to determine the manner for provision of notice. *Maher*, 714 F.2d at 450-51.

The Stipulation provides that within fourteen (14) business days after the Court enters the Preliminary Approval Order, Enochian shall provide notice to Current Enochian Stockholders by:

---

*Litig.*, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd & remanded*, 2010 WL 5927988 (9th Cir. June 23, 2010) (evidence insufficient to support jury verdict for stockholders of $277 million).

(i) posting the copy of Long Form Notice and the Stipulation (and exhibits thereto) on the Investor Relations page of Enochian's website and maintaining the documents there through the Settlement Hearing; (ii) issuing a press release with the Summary Notice on *PR Newswire* with a link to the Company's Investor Relations webpage where the Long Form Notice and Stipulation (and exhibits thereto) will be available; and (iii) filing with the SEC the Long Form Notice and Stipulation (and exhibits thereto) as exhibits to a Form 8-K. Stip. § II.A.4.1.

The proposed Notice describes in plain English the terms and conditions of the proposed Settlement, including: (i) the facts and considerations that led the Settling Parties to conclude that the proposed Settlement is fair, reasonable, adequate, and in Enochian's best interests; (ii) the procedure for objecting to the proposed Settlement; and (iii) the date, place, and time of the Settlement Hearing. Stip. Exs. B-C. Given that the proposed Notice and Summary Notice are reasonably calculated to apprise Current Enochian Stockholders of the pendency and Settlement of the Derivative Matters and afford them an opportunity to present their objections, if any, the form of the notice program should be approved. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

Moreover, the notice program employed in this Settlement has been widely used in similar shareholder derivative settlements and approved by numerous courts as meeting due process. *See, e.g.*, *Zuora*, No. 3:19-cv-5701-SI (N.D. Cal. July 14, 2023) (notice published on electronic newswire, Form 8-K filing, and posting on company's website); *Allred on behalf of Aclaris Therapeutics, Inc. v. Walker*, 2021 WL 5847405, at *3 (S.D.N.Y. Dec. 9, 2021) (similar); *Moore v. Verb Tech. Co., Inc.*, 2021 WL 11732976, at *7 (C.D. Cal. Mar. 1, 2021) (similar); *In re Rambus Inc. Deriv. Litig.*, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009) (similar); *In re PMC-Sierra, Inc. Deriv. Litig.*, 2010 U.S. Dist. LEXIS 5818, at *4 (N.D. Cal. Jan. 26, 2010) (similar). Accordingly, the Settling Parties respectfully request that the Court approve the form and manner of Notice as set forth in the Stipulation.

## VII. PROPOSED SCHEDULE OF EVENTS

As part of the Preliminary Approval Order, the Settling Parties request that the Court establish: (i) the deadline for providing notice of the Settlement to Current Enochian Stockholders; (ii) the deadline for Current Enochian Stockholders to object to the Settlement; and (iii) the date of the Settlement Hearing. The Plaintiff proposes the following schedule:

| | |
|---|---|
| Notice and Stipulation (including exhibits thereto) attached to Form 8-K or periodic report filed with the SEC and posted on Enochian's website, and Summary Notice published in *PR Newswire* | Within 14 business days after entry of the Preliminary Approval Order |
| Deadline to file any motions for final approval of the Settlement | At least 21 calendar days before the Settlement Hearing |
| Deadline for Current Enochian Stockholders to object to the Settlement | At least 14 calendar days before the Settlement Hearing |
| Deadline for filing any replies to any stockholder objections | At least 7 calendar days before the Settlement Hearing |
| Deadline for Settling Defendants' Counsel to file affidavit or declaration confirming compliance with form, manner, and timeliness of Notice | At least 28 calendar days before the Settlement Hearing |
| Settlement Hearing | At least 45 calendar days after Notice is provided |

This schedule is similar to those used in numerous other shareholder derivative action settlements and provides sufficient due process to Current Enochian Stockholders with respect to their rights concerning the proposed Settlement.

## VIII. CONCLUSION

The Settlement is an excellent result given the risks inherent in the Derivative Matters and the complexity and expense if the Derivative Matters were to proceed. Thus, the Settlement is "within the range" of what may be approved as fair, reasonable, and adequate, and should be preliminarily approved.

Dated: November 3, 2025

Respectfully submitted,

**WEISS LAW**

*/s/ Joel E. Elkins*

JOEL E. ELKINS (SBN 256020)
8383 Wilshire Blvd., Suite 210
Beverly Hills, CA 90211
Telephone: (310) 208-2800
jelkins@weisslawllp.com

DAVID C. KATZ (*pro hac vice*)
MARK D. SMILOW (*pro hac vice*)
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (212) 682-3025
dkatz@weisslawllp.com
msmilow@weisslawllp.com

*Counsel for Plaintiff*